Docket No. 85469–Agenda 13–September 1999.

In re 
DETENTION OF DAVID C. SAMUELSON (The People of the State of Illinois, Appellant, v. David C. Samuelson, Appellee).

Opinion filed January 21, 2000.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

At issue in this case is the constitutionality of this state’s recently enacted Sexually Violent Persons Commitment Act (725 ILCS 207/1 
et seq.
 (West 1998)), which authorizes the indefinite involuntary commitment of individuals found to be sexually violent persons.

The case comes before us after the State initiated proceedings in March of 1998 to commit David Samuelson under the new law. Samuelson is an inmate in the Department of Corrections who was about to be released from prison following completion of his sentence for aggravated criminal sexual assault, aggravated criminal sexual abuse, and exhibiting harmful material. Following various developments not relevant here, the court conducted a hearing to determine whether there was probable cause to believe that Samuelson was a sexually violent person within the meaning of the Act. Based on the material presented at that hearing, the circuit court determined that probable cause existed and ordered that Samuelson be transferred to the Sheridan Correctional Center pending trial. 725 ILCS 207/30 (West 1998).

Before the trial commenced, the circuit court dismissed the State’s petition on Samuelson’s motion, holding that the Act is unconstitutional. The circuit court’s order constituted a final judgment and had the effect of invalidating the Act. The State therefore appealed directly to our court. 134 Ill. 2d R. 302(a). We stayed the circuit court’s judgment pending the appeal. For the reasons that follow, we now reverse and remand for further proceedings.

The Sexually Violent Persons Commitment Act (725 ILCS 207/1 
et seq.
 (West 1998)), which took effect in January of 1998, allows the State to extend the incarceration of criminal defendants beyond the time they would otherwise be entitled to release if those defendants are found to be “sexually violent.” Under the Act, a person is deemed to be a “sexually violent person” and therefore subject to extended incarceration if he or she

“has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.” 725 ILCS 207/5(f) (West 1998).

For the purposes of this statute, a “sexually violent offense” is defined to mean criminal sexual assault (720 ILCS 5/12–13 (West 1998)), aggravated criminal sexual assault (720 ILCS 5/12–14 (West 1998)), predatory criminal sexual assault of a child (720 ILCS 5/12–14.1 (West 1998)), or aggravated criminal sexual abuse (720 ILCS 5/12–16 (West 1998)); first degree murder, if it is determined by the agency with jurisdiction to have been sexually motivated; or any solicitation, conspiracy or attempt to commit any of the foregoing crimes. 725 ILCS 207/5(e) (West 1998). A “[m]ental disorder” means “a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence.” 725 ILCS 207/5(b) (West 1998).

The provisions of the Act are triggered when a defendant who has been convicted of a sexually violent offense, adjudicated delinquent on the basis of a sexually violent offense, or been found not guilty of a sexually violent offense by reason of insanity is nearing release or discharge from custody. If the defendant “may meet the criteria for commitment as a sexually violent person,” the agency with authority to release or discharge him or her is required to notify the Attorney General and the relevant State’s Attorney “as soon as possible beginning 3 months prior to the applicable date of” the defendant’s anticipated release or discharge. 725 ILCS 207/10 (West 1998).

After the requisite notice is given, a petition alleging that the defendant is a sexually violent person may be filed by the Attorney General or, if the Attorney General elects not to proceed, by the relevant State’s Attorney. 725 ILCS 207/15 (West 1998). Proceedings on the petition are characterized by the law as civil in nature (725 ILCS 207/20 (West 1998)), but at the trial on the merits, “all rules of evidence in criminal actions apply” and “[a]ll constitutional rights available to a defendant in a criminal proceeding” are available (725 ILCS 207/35(b) (West 1998)). A jury trial can be requested by the defendant, the defendant’s attorney, the Attorney General or the State’s Attorney. 725 ILCS 207/25(d) (West 1998). The defendant has the right to an attorney and the court must appoint one for him if he is indigent. He has the right to remain silent, the right to be present and to cross-examine witnesses, and the right to have the hearing recorded by a court reporter. In addition, if the defendant is required to submit to an examination, he is entitled to retain experts or professional persons of his own to perform an examination. If the defendant is indigent, the court shall, at the defendant’s request, appoint a “qualified and available expert or professional person to perform an examination.” 725 ILCS 207/25(e) (West 1998).

Upon the filing of the petition, the court is required to make a determination as to whether the defendant should be detained and to hold a hearing to determine whether there is probable cause to believe that the defendant is a sexually violent person. If probable cause is not established, the petition must be dismissed. If probable cause is shown and if the defendant is not already in custody, the court must order the defendant taken into custody pending trial. 725 ILCS 207/30(c) (West 1998).

At trial, the State has the burden of proving the allegations in its petition beyond a reasonable doubt. 725 ILCS 207/35(d)(2) (West 1998). If the court or jury is not satisfied beyond a reasonable doubt that the defendant is a sexually violent person, the court must dismiss the petition and direct that the defendant be released, unless the defendant is under some other lawful restriction. 725 ILCS 207/35(f) (West 1998). If, on the other hand, the court or jury finds that the defendant is a sexually violent person, the court is required to enter judgment on that finding and order the defendant to be committed to the custody of the Department of Human Services “for control, care and treatment until such time as the person is no longer a sexually violent person.” 725 ILCS 207/40(a) (West 1998).

The initial commitment order is to be made following a hearing. The hearing to be held as soon as practicable after the circuit court’s entry of judgment. In the order, the court must specify either institutional care in a secure facility or conditional release. 725 ILCS 207/40(b)(2) (West 1998). If the defendant is committed to institutional care, the Department of Human Services is required to place the defendant in a facility provided by the Department of Corrections. 725 ILCS 207/50 (West 1998).

After a defendant has been committed to institutional care, the Department of Human Services is to conduct an examination of his mental condition within six months of the initial commitment and again thereafter at least once every 12 months. The purpose of the periodic examinations is to determine whether the defendant has made sufficient progress to be conditionally released or discharged. 725 ILCS 207/55 (West 1998).

A defendant who has been committed to institutional care may petition the court to authorize conditional release once certain time requirements are met. 725 ILCS 207/60(a) (West 1998). If the defendant files the petition without counsel, the court must serve the Attorney General or State’s Attorney and, if the defendant is indigent, appoint counsel to represent him. 725 ILCS 207/60(b) (West 1998).

Once the defendant has filed his petition for conditional release, the court must appoint one or more examiners to examine the defendant and make a written report. After the report has been submitted, the court, sitting without a jury, must hear the petition and must grant it

“unless the State proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not confined in a secure facility.” 725 ILCS 207/60(d) (West 1998).

For a defendant to obtain discharge rather than conditional release, three different procedures are available. The first involves the Secretary of the Department of Human Services. If the Secretary determines, at any time, that the defendant is no longer a sexually violent person, the Secretary must authorize the defendant to petition for discharge. As with hearings on petitions for conditional release, the hearing on such a petition for discharge is before the court, sitting without a jury. The State has the right to have the defendant examined by an expert or professional person and has the burden of proving by clear and convincing evidence that the petitioner is still a sexually violent person. If the State cannot meet that burden, the defendant must be discharged. 725 ILCS 207/65(a) (West 1998).

The second mechanism for discharge is triggered whenever the defendant undergoes one of the periodic examinations required by the statute. At the time of each such examination, the defendant must be given written notice that he has the right to petition for discharge over the Secretary’s objection. If the defendant does not affirmatively waive that right, the court must set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the defendant is still a sexually violent person. 725 ILCS 207/65(b)(1) (West 1998).

If the court finds that there is probable cause to believe that the defendant is no longer a sexually violent person, it must set a hearing on the issue. Again, the hearing is to take place before the court, sitting without a jury, and the State has the burden of proving by clear and convincing evidence that the defendant is still a sexually violent person. 725 ILCS 207/65(b)(2) (West 1998). If the State fails to meet that burden, the defendant is entitled to be discharged. 725 ILCS 207/65(b)(3) (West 1998).

Finally, the defendant may petition for discharge at times other than the periodic examinations and may do so without the approval of the Secretary. If the defendant has not previously filed a petition for discharge without the Secretary’s approval, the court must set a probable cause hearing and, if appropriate, proceed in accordance with the same procedures governing unapproved petitions for review filed at the time of the statutorily mandated periodic examinations. If, on the other hand, the defendant did previously file a petition for discharge without the Secretary’s approval and the court determined based on review of the petition or following a hearing that the petition was frivolous or that the defendant was still a sexually violent person, an important limitation applies. The court is required to dismiss the petition without a hearing unless the petition contains facts that would support a finding that the defendant has so changed that a hearing is warranted. 725 ILCS 207/70 (West 1998).

The case before us today is at a relatively early stage in this process. As previously indicated, the State filed a petition alleging that defendant is a sexually violent person, a hearing was held on that petition, the circuit court determined that there is probable cause to believe that defendant is a sexually violent person, and the court ordered defendant detained pending trial. Trial on the State’s petition has not yet taken place.

There is no dispute that defendant is subject to the Sexually Violent Persons Commitment Act (725 ILCS 207/1 
et seq.
 (West 1998)) by virtue of his criminal convictions for aggravated criminal sexual assault and aggravated criminal sexual abuse. There is no dispute that the proceedings thus far have been in accordance with the Act. There is no dispute that the circuit court had probable cause to believe that defendant is a sexually violent person within the meaning of the law. At this point in the proceedings, defendant’s arguments are addressed solely to the validity of the statute itself. Defendant contends that the law is fatally infirm and cannot be enforced because it denies due process and equal protection; contravenes the prohibition against double jeopardy; violates 
ex post facto
 principles; and infringes on the rights secured by article I, section 13, of the Illinois Constitution of 1970, which provides that “[t]he right of trial by jury as heretofore enjoyed shall remain inviolate.” Ill. Const. 1970, art. I, §13.

In assessing defendant’s arguments, we begin with the well-established rule that all statutes carry a strong presumption of constitutionality. Where, as here, the circuit court has found a statute to be unconstitutional, this court conducts 
de novo
 review of its determination. 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 341, 351 (1999). The party challenging a statute bears the burden of clearly establishing that it is unconstitutional. Our court will uphold a statute whenever reasonably possible, and any doubts will be resolved in favor of the law’s validity. 
People v. Jeffries
, 164 Ill. 2d 104, 111 (1995).

There is no merit to defendant’s contention that the Sexually Violent Persons Commitment Act contravenes the prohibition against double jeopardy and violates 
ex post facto
 principles. On these questions, the United States Supreme Court’s decision in 
Kansas v. Hendricks
, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), is dispositive. In 
Hendricks
 the court addressed the constitutional validity of a Kansas statute similar to the Illinois law at issue here. The court held that the law was civil rather than criminal in nature and that involuntary confinement pursuant to the law’s provisions is not punitive. Accordingly, the court concluded that initiation of its commitment proceedings does not constitute a second prosecution for double jeopardy purposes. Because the law does not impose punishment, the court likewise concluded that it raises no 
ex post facto
 concerns. The court held that the
 ex post facto
 clause is not implicated for the additional reason that the law does not have retroactive effect. It permits involuntary confinement only where the defendant is currently suffering from a mental abnormality or personality disorder and is likely to pose a future danger to the public. 
Hendricks
, 521 U.S. at 369-71, 138 L. Ed. 2d at 519-21, 117 S. Ct. at  2085-86.

The points raised by the United States Supreme Court apply with equal force to Illinois’ version of the law. As with proceedings under the Kansas statute considered in 
Hendricks
, proceedings under the Sexually Violent Persons Commitment Act are civil rather than criminal in nature. The statute so states (725 ILCS 207/20 (West 1998)), and our appellate court has so recognized. See, 
e.g
., 
In re Detention of Tiney-Bey
, 302 Ill. App. 3d 396, 398-99 (1999); 
In re Detention of Anders
, 304 Ill. App. 3d 117, 122 (1999). In addition, as with the Kansas statute, the law has no retroactive effect. A defendant cannot be involuntarily committed based on past conduct. Involuntary confinement is permissible only where the defendant presently suffers from a mental disorder and the disorder creates a substantial probability that he will engage in acts of sexual violence in the future. 725 ILCS 207/15 (West 1998). The Act is therefore not subject to challenge on either double jeopardy or 
ex post facto
 grounds.

 There is likewise no merit to defendant’s contention that the Act violates article I, section 13, of our state’s constitution, which deals with the right to trial by jury. As our summary of the legislation has indicated, a defendant who is the subject of a petition under the Act has an express right to request that a jury determine whether he is a sexually violent person. 725 ILCS 207/25(d) (West 1998). The problem with this provision, according to defendant, is that the law does not afford him the concomitant right to have his case decided by the court, sitting without a jury. Even if he does not request a jury and does not want one, the proceedings may still be presented to a jury if the Attorney General or the State’s Attorney so requests. 725 ILCS 207/25(d) (West 1998). The only way for a defendant to proceed to a bench trial is if the State acquiesces in his desire to forgo a jury.

Defendant’s challenge to this scheme is premised on the principle that in criminal cases, the right to a jury trial encompasses the right to waive a trial by jury. If a criminal defendant wishes to forgo a jury, that desire cannot be overridden by the State. See 
People ex rel. Daley v. Joyce
, 126 Ill. 2d 209, 222 (1988). The flaw in defendant’s analysis is that this is not a criminal case. As we have just discussed, proceedings under the Sexually Violent Persons Commitment Act are civil rather than criminal in nature.

 Defendant makes a separate and distinct challenge under article I, section 13, of the 1970 Constitution to those portions of the Sexually Violent Persons Commitment Act governing petitions for conditional release or discharge filed after the initial commitment. The defect defendant claims with respect to those provisions is the converse of the one he raises with respect to initial commitment proceedings. Instead of failing to give a defendant the right to waive a jury trial when he does not want one, the provisions governing conditional release or discharge do not afford a defendant the option of requesting a jury trial when he 
does
 want one. Unlike initial commitment proceedings, the rules governing petitions for conditional release or discharge do not authorize jury trials at all. The petitions can only be heard by the court, sitting without a jury. 725 ILCS 207/60(d) (West 1998); 725 ILCS 207/65(b)(2) (West 1998).

Contrary to defendant’s contention, the fact that juries are not available on petitions for conditional release or discharge does not render the legislation infirm under article I, section 13. The right to a jury trial secured by article I, section 13, only attaches in those actions where such right existed under the English common law at the time the constitution was adopted. Article I, section 13, was not intended to guarantee trial by jury in special or statutory proceedings unknown to the common law.
 Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 73-74 (1994). Petitions for conditional release or discharge under the Sexually Violent Persons Commitment Act are such proceedings. They are a new statutory creation. Accordingly, defendant cannot claim that the provisions for conditional release or discharge are invalid under article I, section 13, for failing to provide the option of trial by jury.

We turn next to defendant’s contention that the Sexually Violent Persons Commitment Act violates equal protection under the state and federal constitutions. Our court applies the same analysis to equal protection claims brought under the Illinois Constitution of 1970 as it does to equal protection claims under the United States Constitution. 
People v. Fisher
, 184 Ill. 2d 441, 450 (1998). The right to equal protection of the laws requires the government to treat similarly situated persons in a similar manner. It

“ ‘does not preclude the State from enacting legislation that draws distinctions between different categories of people, but it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation.’ ” 
Fisher
, 184 Ill. 2d at 450, quoting 
Jacobson v. Department of Public Aid
, 171 Ill. 2d 314, 322 (1996).

When we review legislation under equal protection analysis, the level of scrutiny applied depends on the type of legislative classification at issue. Classifications based on race or national original or affecting fundamental rights are strictly scrutinized. 
McLean v. Department of Revenue
, 184 Ill. 2d 341, 354 (1998). Intermediate scrutiny applies to discriminatory classifications based on sex or illegitimacy. In all other cases, the court employs the rational basis test. 
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 33 (1996).

This court (
People v. Pembrock
, 62 Ill. 2d 317, 321 (1976)) and our appellate court (
People v. McDougle
, 303 Ill. App. 3d 509, 521 (1999); 
People v. McVeay
, 302 Ill. App. 3d 960, 967-68 (1999)) have held that the Sexually Dangerous Persons Act (725 ILCS 205/0.01 (West 1998)) is subject to the rational basis test.
 We discern no reason why the same standard should not apply to the Sexually Violent Persons Commitment Act. The statutory classifications assailed by defendant are not based on race, national origin, sex or illegitimacy, nor do they implicate fundamental rights.

Under the rational basis test, judicial review of legislative classifications is limited and generally deferential. The court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. If any set of facts can reasonably be conceived to justify the classification, it must be upheld. 
In re A.A.
, 181 Ill. 2d 32, 38 (1998).

Defendant’s equal protection arguments are not well defined and have changed over time. Before our court, his principle contention appears to be that the law is invalid because it does not afford defendants the same rights available to defendants in criminal cases or to persons facing involuntary admission to a mental health facility pursuant to the Mental Health and Developmental Disabilities Code (405 ILCS 5/1–100 
et seq.
 (West 1998)). This contention is without merit. As our survey of the law has indicated, the Sexually Violent Persons Commitment Act does afford defendants a wide range of protections available to individuals facing criminal prosecution. See 725 ILCS 207/25, 35(b) (West 1998). Although disparities do exist, statutory proceedings under the Act are civil rather than criminal in nature, and it is by no means irrational for the General Assembly to treat civil litigants different from criminal ones.

That differences exist between the Sexually Violent Persons Commitment Act and the Mental Health and Developmental Disabilities Code likewise presents no equal protection problems. In 
People v. Pembrock
, 62 Ill. 2d 317, 321-22 (1976), our court considered a similar challenge involving the Sexually Dangerous Persons Act. There, as here, the claim was made that the statute was invalid because there were substantial differences between commitment proceedings under the Act and proceedings under what was then known as the Mental Health Code. We rejected that argument by noting that persons subject to the Sexually Dangerous Persons Act possess characteristics which set them apart from the greater class of persons who fall within the Mental Health Code , and such persons present different societal problems. These same considerations are equally applicable here. The provisions governing involuntary admission of adults to mental health facilities under the Mental Health and Developmentally Disabilities Code apply generally to individuals suffering from mental illness. By contrast, far more specific criteria must be met to qualify as a sexually violent person under the Sexually Violent Persons Commitment Act. The defendant must have been convicted of a sexually violent offense or been adjudicated a delinquent for a sexually violent offense or been found not guilty of a sexually violent offense by reason of insanity and he must suffer from a mental disorder that makes it substantially probable that he will engage in acts of sexual violence in the future. 725 ILCS 207/5(f) (West 1998). If sexually dangerous persons present different societal problems than those whose conduct is subject to the larger, more inclusive class as defined by the Mental Health and Developmentally Disabilities Code, the same is surely true of defendants who meet the foregoing criteria and qualify as sexually violent persons. Accordingly, we cannot say that the classification formulated by the legislature is unreasonable.

Defendant’s final argument is that the Sexually Violent Persons Commitment Act is invalid because the procedures for post-commitment discharge do not satisfy the requirements of due process. This argument was adopted by the circuit court and appears to have been the primary basis for its decision. According to the circuit court, the post-commitment discharge proceedings set forth in the Act are constitutionally infirm because such proceedings are not automatic, they require defendants to make an initial showing that there is probable cause to believe that they are no longer sexually violent persons in cases where the petition has not been authorized by the Secretary of the Department of Human Services, they reduce the State’s burden of proof from beyond a reasonable doubt to clear and convincing, and they do not afford defendants the option of having the matter tried before a jury.

 In cases of involuntary civil commitment, due process does not require the State to prove its case beyond a reasonable doubt. The State may confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous. 
Foucha v. Louisiana
, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 448, 112 S. Ct. 1780, 1786 (1992); 
Addington v. Texas
, 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979). Because due process does not require proof beyond a reasonable doubt to sustain the initial commitment, it does not require proof beyond a reasonable doubt in subsequent discharge proceedings. The Sexually Violent Persons Commitment Act is therefore not subject to challenge on this basis.

With respect to the remaining deficiencies cited by the circuit court, defendant has not presented and the circuit court did not cite any authority to support a finding that due process has been violated. In view of the limited argument presented to us on this issue, we are reluctant to issue a blanket pronouncement that the post-commitment discharge procedures present no due process problems. We hold simply that the defendant in this case has failed to meet his burden of clearly establishing that those procedures are unconstitutional.

For the foregoing reasons, the judgment of the circuit court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JUSTICE RATHJE, specially concurring:

I agree with the majority’s conclusion that respondent
(footnote: 1) failed to meet his burden of demonstrating that the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 
et seq.
 (West 1998)) violates either the equal protection clause or the due process clause. I do not agree, however, with the majority’s decision to address other arguments not raised in respondent’s brief. The majority addresses respondent’s contentions that the Act contravenes the prohibition against double jeopardy; violates 
ex post facto
 principles; and violates article I, section 13, of the Illinois Constitution. Although respondent raised those arguments at the trial court level, he abandoned them on appeal when he failed to include them in his brief. These arguments therefore are waived (see 177 Ill. 2d Rs. 341(e)(7), (f)), and this court should not address them.

JUSTICE HEIPLE, dissenting: 

Defendant David Samuelson pled guilty to aggravated criminal sexual assault and aggravated criminal sexual abuse on March 1, 1990. He was sentenced to concurrent terms of 15 and seven years in the penitentiary. Defendant was subsequently scheduled to begin supervised release on March 5, 1998. One day before his release, however, the State instituted proceedings to further incarcerate him under the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 
et seq
. (West 1998)), which first became law in 1998. The Act authorizes the State to commit defendants found to be“[s]exually violent person[s]” for an indefinite period of time after the completion of their criminal sentences. 725 ILCS 207/5(f) (West 1998).

Defendant argues that the Act violates the Illinois Constitution’s provision that a person shall not “be twice put in jeopardy for the same offense” (Ill. Const. 1970, art. I, §10) because the Act imposes a second punishment upon a criminal defendant who has already served his sentence. Defendant also argues that applying the Act to defendants such as himself, who committed their crimes before its effective date, violates the Illinois Constitution’s provision against 
ex post facto
, or retroactive, criminal laws. Ill. Const. 1970, art. I, §16. The majority rejects both of these arguments by characterizing the confinement authorized by the Act as civil rather than criminal in nature. The majority’s characterization is incorrect.

There are a multitude of compelling reasons to conclude that confinement under the Act is criminal punishment rather than a mere civil remedy. The most obvious is that the Act is found in the Code of Criminal Procedure of 1963. See 725 ILCS 207/1 
et seq.
 (West 1998). More importantly, the Act explicitly affords defendants against whom it is enforced “[a]ll constitutional rights available to a defendant in a criminal proceeding.” 725 ILCS 207/35 (West 1998). The Act also mandates the use of criminal rules of evidence. 725 ILCS 207/35 (West 1998). Although the General Assembly is to be commended for providing these criminal procedural safeguards within the Act, their inclusion serves to underscore the criminal character of the Act. Moreover, defendants adjudicated sexually violent under the Act are confined in Department of Corrections facilities. 725 ILCS 207/15 (West 1998).

Yet another indication of the criminal character of the Act is that, in the vast majority of cases, it applies only to defendants who have been convicted of, and are already serving a sentence for, a criminal sexual offense.
(footnote: 2) 725 ILCS 207/5(f) (West 1998). In other words, a criminal charge or conviction is a necessary precondition for confinement under the Act. If the Act were truly civil, it would apply to all persons who have a mental disorder of a sexual nature rather than only to those who have been prosecuted for a sexual crime. Similarly, the fact that the Act allows the State to request continued confinement of a defendant whom the State has already chosen to prosecute criminally shows that the State is really merely seeking to impose a supplemental sentence of confinement. In cases such as this, the State had the option of seeking civil commitment 
in lieu of
 criminal proceedings at the time of the original charge. See 405 ILCS 5/1–100 
et seq.
 (West 1996); 725 ILCS 205/1–0.01 Sexually Dangerous Persons Act 
et seq
. (West 1996). That the State in every proceeding under the Act has chosen not to exercise this fully available civil option contradicts the State’s assertion that the Act’s purposes are civil and demonstrates that the Act is a pretext for incarcerating sexual offenders for longer periods of time than the sentence which the Criminal Code provides. Certainly, the legislature has wide discretion in fixing penalties for specific crimes. Should the legislature wish to increase the penalties for sexual crimes, it has that option. What it may not do, however, is attach a second sentence subsequent to the one for which the defendant was initially sentenced.

Further indication that the Act’s procedures are merely a proxy for imposing additional criminal punishment comes from the astonishing ease with which a convicted sex offender can be brought within the Act’s provisions. Incarceration under the Act is premised upon a finding that a convicted sex offender suffers from a “mental disorder.” 725 ILCS 207/5(f) (West 1998). The Act defines “mental disorder” as “a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence.” 725 ILCS 207/5(b) (West 1998). The facts of the instant case aptly demonstrate, however, that a finding of a mental disorder flows almost inexorably from a conviction for a violent sex offense. When asked at the probable cause hearing to identify the “mental disorder” from which defendant was suffering, the State’s expert diagnosed defendant as having “pedophilia.” When asked what factors enabled her to arrive at this diagnosis, the State’s expert explained, “The first criteria is that over–longer than a six month period [defendant] engaged in sexual behavior with children in spite of any consequences. The second criteria is that despite consequences, personal and criminal consequences, he kept–in spite of that he continued his behaviors.” Thus, the State’s expert in this case was able to diagnose defendant as having a “mental disorder” within the meaning of the Act 
solely by virtue of defendant’s having committed the acts which led to his criminal conviction and punishment
. In light of this fact, the State’s contention that the Act’s procedures are not criminal is entirely incredible.

Finally, the indefinite nature of the confinement period under the Act is a telling manifestation of the Act’s criminal purposes. By allowing the State to secure a defendant’s continued incarceration even after prosecuting and extracting from him the full service of a criminal sentence, the Act effectively amends every sentencing statute applicable to sexual crimes to give the State the option of seeking life imprisonment whenever it is displeased with the sentence imposed by the court in the defendant’s original prosecution. The Illinois Constitution cannot countenance such a perverse transmutation of the criminal law. If the State desires to adopt a policy mandating a life sentence for certain serious sexual crimes, it must do so openly within the sentencing provisions of the Criminal Code.

Because the Act is criminal rather than civil, it violates the Illinois Constitution’s double jeopardy provision by imposing further punishment upon defendants who have already served their sentences. Furthermore, when the Act is applied to individuals such as defendant, who committed their crimes before it was passed, it also violates the Illinois Constitution’s 
ex post facto
 clause. The majority rejects these arguments because the United States Supreme Court has rejected them as a matter of federal constitutional law.  Fortunately, the United States Supreme Court has no authority to curtail the protections afforded by our own state constitution.  See 
People v. Krueger
, 175 Ill. 2d 60, 74 (1996).  The Act is unconstitutional as a matter of Illinois law.  Because the majority holds otherwise, I respectfully dissent.

FOOTNOTES
1:
1
In the majority opinion, David Samuelson is referred to as “defendant.” Because this is a civil commitment proceeding and not a criminal case, I will refer to him as “respondent.”

2:
2
The Act may also be applied to offenders who have been found not guilty of a sexually violent offense by reason of insanity. 725 ILCS 207/5(f) (West 1998).