# Illinois Official Reports

## Appellate Court

---

### *In re Commitment of Kugler*, 2019 IL App (3d) 180305

---

| | |
|---|---|
| Appellate Court Caption | *In re* COMMITMENT OF DEVIN M. KUGLER (The People of the State of Illinois, Petitioner-Appellee, v. Devin M. Kugler, Respondent-Appellant). |
| District & No. | Third District<br>No. 3-18-0305 |
| Filed | December 4, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 07-MR-214; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nate Nieman, of Rock Island, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Rachel L. Barbat, Assistant Attorneys General, of counsel), for the People. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Carter and Lytton concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, the court found that respondent, Devin M. Kugler, was a sexually violent person (SVP) subject to commitment under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2006)) based on acts he committed when he was 16. Respondent appealed his commitment. This court affirmed. See *In re Detention of Kugler*, No. 3-08-0123 (2009) (unpublished order under Illinois Supreme Court Rule 23). In September 2017, the State filed its tenth motion for periodic reexamination as required by the Act. In May 2018, respondent filed a motion to vacate order of commitment/motion to dismiss. On May 18, 2018, the circuit court held a hearing on the motions. It denied respondent's combined motions and granted the State's motion. On appeal, respondent argues that his commitment is unconstitutional as applied to him in light of *Miller v. Alabama*, 567 U.S. 460 (2012). We affirm.

¶ 2                                              I. BACKGROUND

¶ 3 The actions underlying respondent's commitment are detailed in this court's order affirming his commitment. See *Kugler*, No. 3-08-0123. We will repeat only those facts necessary to our analysis.

¶ 4 In April 2007, the State filed a petition alleging respondent, then age 21, was an SVP subject to commitment under the Act. The petition alleged that in 2002, when respondent was 16 years old, a court adjudicated respondent delinquent for the offense of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(2)(i) (West 2002)) because he penetrated the anus of an 8-year-old girl with his finger and rubbed her buttocks. At the time of conviction, he admitted that he fantasized about having sex with young children between the ages of 8 and 11. Treatment providers for respondent alleged he reported sexually abusing two other young girls, ages six and eight. Also, respondent had sexually deviant fantasies about his young cousin. A doctor diagnosed respondent with (1) pedophilia, sexually attracted to females, and (2) antisocial personality disorder. The petition contended that these mental disorders affected respondent's emotional and volitional capacity and created a substantial probability that he would commit future acts of sexual violence.

¶ 5 The court held a bench trial on the matter. A clinical psychologist testified as an expert in the evaluation and treatment of SVPs. She interviewed respondent as part of the SVP commitment proceedings. Respondent admitted to the offense that led to his 2002 conviction. The psychologist reviewed his records from a treatment facility where he admitted to engaging in sexual activities with his foster sister when she was 4 or 6 and he was 12. He would take showers with her, masturbate in front of her, fondle her, and place his penis against her buttocks when they were in a pool. Respondent performed oral sex on another girl when she was eight or nine. Respondent denied these acts when the psychologist questioned him. He did admit to having sexual fantasies about his underage cousin but claimed he did not act on them. The psychologist was concerned that respondent's deviant behavior had persisted from age 12 through age 20.

¶ 6 Respondent also committed several nonsexual offenses, including two convictions and an additional charge for aggravated battery. In 2006, a young woman obtained an order of protection against respondent. She alleged that respondent threatened to kill everyone she loved, called her multiple times a day, stalked her at the mall, tried to get her alone, begged her

for sex, and told her that he wanted to rape her. The psychologist opined that these offenses indicated respondent's tendency to disobey the law and demonstrate violent, sometimes sexually violent, behavior.

¶ 7 The circuit court found the State proved beyond a reasonable doubt that respondent was an SVP under the Act. Respondent chose not to have a dispositional hearing. The court ordered respondent committed for institutional care in a secure facility. Respondent appealed, arguing that the State failed to meet its burden of proof. This court affirmed.

¶ 8 The Act requires the State to file a motion for periodic reexamination at least annually. 725 ILCS 207/55 (West 2006). In September 2017, the State filed its tenth motion for periodic reexamination. In May 2018, respondent filed a motion to vacate order of commitment/motion to dismiss, citing *Miller*'s holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479.

¶ 9 On May 18, 2018, the court held a hearing on the pending motions. The court considered Dr. David Suire's written report based on his July 2017 examination of respondent. Suire opined that respondent remained in the self-application (or third) phase of the treatment program for SVPs. Although respondent made progress since his last reexamination, he continued to struggle with many reoccurring issues like denial of his recidivism risk and inappropriate sexual interests. Respondent remained ignorant as to the full range of his treatment needs and risk factors. He stopped taking his psychotropic medication. Suire found this decision concerning due to respondent's therapist's observation that respondent was developing a romantic/sexual interest in a female therapist. This was a reoccurring issue for respondent over the course of his treatment. Respondent denied behaving inappropriately toward the woman who obtained a restraining order against him, suggesting a lack of insight into his behavior. Suire scored respondent on the STATIC-99, which is an actuarial assessment that measures an offender's sexual recidivism risk. Respondent's risk of recidivism was between three and a half and four times higher than the typical sex offender in the normative sample. Suire found that respondent met the diagnostic criteria for pedophilic disorder, sexually attracted to females, nonconsenting females, delusional disorder, erotomanic type (currently in an acute episode), antisocial personality disorder with borderline features, and other specific paraphilic disorder. Suire believed that it was "substantially probable" that respondent would reoffend. Ultimately, the court denied respondent's combined motions and granted the State's motion for periodic reexamination.

¶ 10                                                    II. ANALYSIS

¶ 11 On appeal, respondent argues that his SVP commitment is unconstitutional in light of *Miller* and recent decisions from this district. Respondent made an "as-applied" challenge to the constitutionality of his commitment. In making an as-applied challenge, respondent contends that the pertinent sections of the Act are unconstitutional as applied to the particular circumstances of respondent's situation. *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 17. He argues that involuntary commitment is punitive, such that it violates the eighth amendment proscription against cruel and unusual punishment. Respondent presents this court with a question of constitutional validity of a statute, which calls for *de novo* review. *People v. Doll*, 371 Ill. App. 3d 1131, 1138 (2007).

¶ 12    In *Miller*, the United States Supreme Court addressed whether a mandatory sentencing scheme that imposed a life-without-parole sentence on a 14-year-old child was unconstitutional under the eighth amendment. *Miller*, 567 U.S. at 474. A jury found the named petitioner guilty of murder. *Id.* at 469. The trial court sentenced him to the mandatory punishment as part of the relevant sentencing scheme. *Id.* When addressing whether the sentencing scheme violated the eighth amendment proscription against cruel and unusual punishment, the Court found these mandatory punishments "prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender," noting that youth is a factor the sentencing court should be able to take into consideration. *Id.* at 474. The Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. The holding was narrow and specific, as the Court refused to fashion a bright line rule barring life-without-parole sentences for juveniles. See *id.* Attendant facts and circumstances matter; the eighth amendment requires the sentencing court take them into account. *Id.* at 480.

¶ 13    Illinois went a step further with its application of the *Miller* rule. Our supreme court declared *de facto* life sentences unconstitutional as well. *People v. Reyes*, 2016 IL 119271, ¶ 10. Respondent contends his SVP commitment is a *de facto* life sentence, bringing him under the *Miller* umbrella. He asks this court to hold that SVP commitment is punitive in nature, relying on cases that no longer have precedential force because the Illinois Supreme Court vacated the judgments. Respondent can cite no case holding that SVP commitment is considered punishment or applying *Miller* and its progeny to the Act.

¶ 14    Before *Miller*, our supreme court addressed the constitutionality of the Act in *In re Detention of Samuelson*, 189 Ill. 2d 548, 559 (2000). The defendant argued the Act was unconstitutional in that it (1) denied due process and equal protection, (2) violated the prohibition against double jeopardy and *ex post facto* principles, and (3) infringed upon the right to trial by jury. *Id.* at 557-58. The court emphasized that "proceedings under the [Act] are civil rather than criminal in nature." *Id.* at 559. It echoed the United States Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997), that held involuntary confinement pursuant to a similar Kansas statute was not punitive. *Samuelson*, 189 Ill. 2d at 559. Our supreme court noted "[t]he flaw in defendant's analysis is that this is not a criminal case." *Id.* at 560.

¶ 15    *Samuelson* controls. Here, respondent is asking this court to declare the Act unconstitutional because of principles the Supreme Court enumerated in a criminal case. Respondent attempts to persuade us that involuntary commitment is punishment such that *Miller* applies. Our supreme court, and the United States Supreme Court, have held otherwise. "The appellate court lacks authority to overrule decisions of [the supreme] court, which are binding on all lower courts." *People v. Artis*, 232 Ill. 2d 156, 164 (2009). For this reason, we reject respondent's constitutional challenge and affirm the circuit court's grant of the State's motion for periodic reexamination.

¶ 16                                III. CONCLUSION

¶ 17    For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 18    Affirmed.